## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | |
|---|---|
| ROBERT LEE BOUDREAUX, ET AL. | CIVIL ACTION NO. 18-0956 |
| VERSUS | JUDGE DONALD E. WALTER |
| AXIALL CORPORATION, ET AL. | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment Seeking Dismissal of Plaintiffs' LUTPA Claims filed by the Defendants, Eagle US 2 LLC, Axiall Corporation, and Axiall, LLC (collectively "Defendants"). See Record Document 55. The Plaintiffs, Robert Lee Boudreaux and Shirley A. Boudreaux (collectively "Plaintiffs" or "the Boudreauxs"), oppose the motion. See Record Document 118. For the reasons assigned herein, Defendants' motion is **GRANTED**.

### BACKGROUND INFORMATION

The Boudreauxs allege that their land has been contaminated and damaged by brine leaking from two pipelines owned and operated by the Defendants. See Record Document 1-15 at ¶ 5. Plaintiffs maintain that the contamination occurred due to the wrongful acts and/or omissions of the Defendants including the negligent operation, maintenance, and monitoring of the pipelines in question. See id. Plaintiffs also allege that Defendants' conduct related to their operation of the pipelines violated the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. Rev. Stat. § 51:1401 et seq. See id. at ¶¶ 54-56.

Defendants have filed a motion for partial summary judgment to dismiss Plaintiffs' LUTPA claims on the grounds that the Plaintiffs lack standing to assert such claims. See Record

Document 55-1 at 3-4.  Defendants also maintain that even if Plaintiffs do have standing they have failed to allege conduct sufficient to raise actionable LUTPA claims.  See id. at 4-5.  Finally, Defendants suggest that Plaintiffs' LUTPA claims are prescribed because they have failed to identify an unfair trade practice allegedly taken by Defendants within one year of the filing of their complaint.  See id. at 5.[1]

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence.  See Celotex, 477 U.S. at 322-323.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact with the motion for summary judgment, the nonmovant must demonstrate that there is, in fact, a genuine issue for dispute at trial by going "beyond the pleadings" and designating specific facts for support. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,'" by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence.  Id. (quoting Matsushita Elec.

---

[1] It is not facially apparent to the Court that Plaintiffs' LUTPA claims are prescribed.  Although Plaintiffs' LUTPA claims center on the alleged failure of PPG to replace the pipelines in a timely manner, Plaintiffs have alleged that leaks occurred within a month of filing their lawsuit.  See Record Document 1-15 at ¶ 27.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986)). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1985) (internal citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986) (the court must "review the facts drawing all inferences most favorable to the party opposing the motion"). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so weak and tenuous that it could not support a judgment in the nonmovant's favor. See Little, 37 F.3d at 1075. A grant of summary judgment is warranted when the record as a whole "could not lead a rational finder of facts to find for the nonmoving party." Matsushita, 475 U.S. at 587.

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## LAW AND ANALYSIS

I.     **Whether Plaintiffs Have Standing Under LUTPA**

The Louisiana Unfair Trade Practices Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A). The purpose of LUTPA is to protect consumers and to foster competition by

"halting unfair business practices and sanctioning the businesses which commit them, preserving and promoting effective and fair competition, and curbing business practices that lead to a monopoly and unfair restraint of trade within a certain industry." Quality Envtl. Processes, Inc. v. I.P Petroleum Co. Inc., 2013-1582 (La. 5/7/14), 144 So.3d 1011, 1025.  LUTPA establishes a private right of action to "[a]ny person who suffers any ascertainable loss of money or movable property… as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful" under section 51:1405(A).  La. Rev. Stat. § 51:1409(A).

The Defendants argue that LUTPA's private right of action is limited solely to direct consumers or business competitors, citing the Fifth Circuit case Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., Inc., 292 F.3d 471, 480 (5th Cir. 2002).  See Record Document 55-1 at 3. Based on this precedent, Defendants argue that Plaintiffs' LUTPA claims must be dismissed because Plaintiffs are neither a business competitor nor a direct consumer.  See id.  Defendants are correct that Tubos de Acero de Mexico, S.A. provides that only direct consumers or business competitors have standing to sue under LUTPA, and the Fifth Circuit has not overruled the decision.  However, the Louisiana Supreme Court has since issued a plurality opinion in Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc., 2009-1633 (La. 4/23/10), 35 So.3d 1053, which this Court must consider in making an Erie guess in its application of state law.  In Cheramie, the Louisiana Supreme Court noted that the LUTPA statute states that "*[a]ny person who suffers any ascertainable loss… as a result of the use or employment by another person of an unfair or deceptive method, act, or practice… may bring an action.*" Id. at 1057 (emphasis added) (citing La. Rev. Stat. § 51:1409).  As such, the Louisiana Supreme Court noted that the language of the statute does not "contain clear, unequivocal and affirmative expression that the

4

private right of action provided in La. Rev. Stat. 51:1409(A) extends only to business competitors and consumers," and "any such limitation that has found its way into the jurisprudence resulted without proper analysis of the statute." Id. at 1057-58.

Following the Cheramie decision, both Louisiana appellate courts and federal district courts have found that private parties have a right of action under LUTPA. See Caldwell Wholesale Co., LLC v. R.J. Reynolds Tobacco Co., No. 17-0200, 2018 WL 2209165, at *6 (W.D. La. May 11, 2018) (collecting cases). In line with the Cheramie decision, the Court finds that the Plaintiffs have standing to assert a claim under LUTPA.

## II. Plaintiffs' LUTPA Claims

The Plaintiffs allege that Defendants violated LUTPA by engaging in conduct that "offends established public policy and is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious." See Record Document 1-15 at ¶¶ 54-55. Plaintiffs describe the alleged acts and omissions by the Defendants to include: "(i) the Defendants' failure to inform the Plaintiffs of the damage they were causing to their land; (ii) their willful ignorance of the decades of industry literature warning about the corrosive effects of brine, (iii) their failure to promptly remediate and remove any contamination caused by the pipeline leaks; and (iv) their failure to promptly replace all or portions of the pipelines after experiencing numerous brine leaks in 2012 and 2013." Id. at ¶ 55. Plaintiffs also allege that Defendants made false representations to the Louisiana Department of Environmental Quality ("LDEQ") related to the numerous brine leaks. See id. at ¶¶ 24, 55.

LUTPA proscribes "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A). "Because of the broad sweep of this language, 'Louisiana courts determine what is a LUTPA violation on a

case-by-case basis.'" Quality, 144 So.3d at 1025. To establish a LUTPA claim a plaintiff "must show that the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." Id. The Louisiana Supreme Court has held that the "range of prohibited acts under LUTPA is extremely narrow" because the statute prohibits "only fraud, misrepresentation, and similar conduct, and not mere negligence." Id. at 1025. A critical factor in determining whether conduct was unfair or deceptive under LUTPA is the "motivation and intent" of the defendant. See Pikaluk v. Horseshoe Entm't, L.P., 810 F. App'x 243, 250 (5th Cir. 2020) (quoting Iberia Bank v. Broussard, 907 F.3d 826, 840 (5th Cir. 2018)).

Courts are reluctant to find liability under LUTPA when the evidence reveals a normal business relationship. See Omnitech Int'l, Inc. v. Clorox Co., 11 F.3d 1316, 1332 (5th Cir. 1994). Businesses are not prohibited by LUTPA from exercising permissible business judgment or engaging in appropriate free enterprise transactions. See Turner v. Purina Mills, 989 F.2d 1419, 1422 (5th Cir. 1993). "The statute does not forbid a business to do what everyone knows a business must do: make money." Id. Indeed, even "conduct that offends established public policy and is unethical is not necessarily a violation under LUTPA." Quality, 144 So.3d at 1025.

Defendants argue that Plaintiffs have failed to state a viable LUTPA claim. See Record Document 55-1 at 4-5. Defendants maintain that Plaintiffs' allegations are not the type of egregious conduct required to be actionable under LUTPA. See id. at 5. Defendants also assert that Plaintiffs have failed to allege any particular factual instances of fraud or misrepresentations by the Defendants. See id.

In response, the Plaintiffs argue that more than enough evidence exists to support a finding that Defendants violated LUTPA by failing to act in a timely manner to replace the

existing pipelines. See Record Document 118 at 14. The Plaintiffs assert that in the seventeen years between the first noted leaks and the completion of the replacement pipeline nearly 600 leaks were recorded, including 37 leaks on or adjacent to the Plaintiffs' land. See id. Plaintiffs note that as early as 2002, in-house engineers for PPG, the owner of the pipelines before Defendants, raised concerns regarding corrosion and pitting of the pipelines, including dime sized pits that were associated with known leaks, and opined that the pipelines would ultimately have to be replaced. See id. at 15. Plaintiffs also refer to a 2008 report by a consulting engineering firm, which allegedly found that leaks were occurring at an increasing rate. See id. at 16. Plaintiffs argue that the engineering firm recommended installing a new pipeline before it became "impossible to keep up with the increasing rate of leak repairs." See id. at 17-18. Despite this information, Plaintiffs note that upper-level management at PPG decided not to proceed in constructing a replacement pipeline because it did not like the "price tag" for the project, despite making hundreds of millions of dollars in profit. See id. at 23. The Plaintiffs also submit that in 2013 an engineer for PPG noted in an email that the pressure in one of the pipelines was intentionally capped at a lower level to prevent a "sprinkler system effect through the town of Sulphur." See id. at 14.

  The Court finds that the evidence, as presented by the Plaintiffs, is insufficient to support a claim for a violation of LUTPA.[2] The range of prohibited acts under LUTPA is extremely narrow, with the act providing relief for egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct. See Sutton v. Adams, 2018-0196, 2018 WL 6683207 (La. App. 4 Cir. 12/19/18). Allegations of negligence are insufficient. See

---

[2] The Court notes that Plaintiffs provided a considerable amount of deposition testimony wherein counsel questioned several witnesses about certain documents and email chains concerning PPG's knowledge of the corrosion in the pipelines. Neither the documents themselves nor the email chains were provided to the Court in connection with this motion.

Quality, 144 So.3d. at 1025. Plaintiffs have not directed the Court to evidence in the record that would indicate that Defendants engaged in fraud, misrepresentation, deception, or other unethical conduct. Plaintiffs alleged in their Complaint that Defendants made false representations to LDEQ related to the brine leaks, but no evidence of alleged misrepresentations were provided in relation to this motion.

The information provided by the Plaintiffs suggests that PPG was aware that the pipelines were experiencing corrosion as early as 2000, and that the pipelines had become seriously degraded by 2008. See Record Document 118-3, Baker I Dep. at 219; Record Document 118-4, Baker II Dep. at 40. However, after researching the extent of the leaks through the use of consulting firms and receiving feedback from their own engineers urging replacement of the pipelines, PPG ultimately concluded that it did not want to proceed with replacing the pipeline given its estimated cost of 23 million dollars. See Record Document 118-3, Baker Dep I. at 228-240; Record Document 118-11, Baker Dep II. at 75, 77, 80. Instead, PPG monitored the pipelines, reduced the flow of brine below the rated capacity in an effort to prevent further leaks, and replaced certain sections of the pipelines. See Record Document 118-11, Baker Dep. II at 77, 169-170; Record Document 118-12, Casey Dep. at 34. The record reflects that Eagle became the owner of the pipelines in January 2013, and thereafter, moved quickly on the issue by approving the construction of a replacement pipeline on May 9, 2013. See Record Document 118-11, Baker Dep. II at 134-136. This approval occurred nearly a year before LDEQ issued a compliance order mandating that the pipelines be replaced. See Record Document 118-2, Ex. B.[3] A business is allowed to engage in a cost/benefit analysis of expenditures. "LUTPA does not

---

[3] The replacement pipeline became operational on January 23, 2017. See Record Document 118-3, Baker Dep. I at 193.

prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions." See Cheramie, 35 So. 3d at 1060 (citing Turner, 989 F.2d at 1422).

The Court finds that Plaintiffs' allegations are consistent with a claim based in negligence. It is certainly possible that a jury will find that Defendants were negligent by delaying the installation of a new pipeline to replace the existing and leaking pipelines. However, negligence is simply insufficient to support a LUTPA claim. Moreover, it is clear from the evidence submitted that the Defendants' decision to delay the replacement of the pipelines was motivated by financial concerns with the price of the project, not with the intent to cause harm to the Plaintiffs or others. This is insufficient to establish a LUTPA claim. Accordingly, Plaintiffs' LUTPA claim must be dismissed.

## CONCLUSION

For the reasons assigned, Defendants' motion for partial summary judgment (Record Document 55) is **GRANTED**. Plaintiffs' LUTPA claims are hereby **DISMISSED WITH PREJUDICE**. An order consistent with this opinion shall issue forthwith.

**THUS DONE AND SIGNED**, this 23rd day of March, 2021.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE