UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

---

| | |
|---|---|
| ROBERT LEE BOUDREAUX, ET AL. | CIVIL ACTION NO. 18-0956 |
| VERSUS | JUDGE DONALD E. WALTER |
| AXIALL CORP., ET AL. | MAGISTRATE JUDGE KAY |

---

### MEMORANDUM RULING

Before the Court is a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the Alternative, a More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e) filed by Boeing Aircraft Holding Company f/k/a Boeing Petroleum Services, Inc. ("BPS").  See Record Document 164.[1]  Third-Party Plaintiffs, Eagle US 2 LLC, Axiall Corporation, and Axiall, LLC (collectively "Eagle/Axiall") oppose the motion.  See Record Document 176.  For the reasons assigned herein, the motion is **DENIED**.

### BACKGROUND INFORMATION

This motion relates to the third-party litigation in the above-captioned matter filed by Eagle/Axiall against BPS and other Third-Party Defendants, including Parsons Government Services Inc., Gilbane Building Company, and Gilbane Inc. ("Parsons-Gilbane").  The Court has previously provided a detailed recitation of the procedural and factual history associated with

---

[1] Eagle/Axiall object to the motion as untimely because it was not filed within 21 days of service as required by Rule 12(a)(1)(A).  See Record Document 176 at 16-18.  The Court notes that Eagle/Axiall could have moved for a default judgment pursuant to Rule 55.  While a defendant should file a responsive pleading or motion to dismiss within the time provided by Rule 12, the deterrence for failing to do so is the threat of a default judgment.  Rule 12(b)(7) states that a motion asserting one of the enumerated defenses must be made before a responsive pleading, which BPS has done.  The Court will proceed in evaluating BPS's motion.

this case in its ruling on Parsons-Gilbane's motion to dismiss. See Record Document 243. As such, the Court will not repeat itself in this ruling.

With regard to BPS, the following information is alleged in Eagle/Axiall's Second Supplemental and Amended Third-Party Complaint (herein "Complaint"). See Record Document 103. Eagle/Axiall allege that BPS was the primary contractor for decommissioning the SPR site and returning the Sulphur Mines back to private control. See id. at ¶¶ 41-42. Eagle/Axiall state that BPS also provided contract management services of the SPR site for the Department of Energy pursuant to contracts that were similar to the SPR contracts by which Parsons-Gilbane were bound. See id. at ¶ 43. It is alleged that BPS constructed and operated the SPR site negligently and in breach of contractual obligations to perform work in a workmanlike manner by introducing microbial agents into the brine caverns resulting in microbiologically influenced corrosion, which ultimately led to the pipeline leaks upon the land of the Plaintiffs in the underlying litigation. See id. at ¶ 45.

Eagle/Axiall allege that during the decommissioning of the SPR site BPS chose to use untreated surface water from the Sabine River Diversion Canal rather than purchasing brine water for use in effectuating a drawdown of crude oil levels at the SPR site. See id. at ¶¶ 46-47. Eagle/Axiall assert that the untreated raw water was left inside the cavern until the site was reacquired by PPG[2] a year later. See id. at ¶ 48. The abandonment of the untreated raw water in the cavern is alleged to have allowed sulfate-reducing bacteria to proliferate and exacerbate the corrosion experienced in the caverns and brine pipelines. See id. at ¶ 49. This environmental threat of the use of untreated water was allegedly known to the federal contractors and to BPS, but was not communicated or reasonably known to Eagle/Axiall or PPG. See id. at ¶ 50.

---

[2] On January 22, 2013, PPG sold certain pipelines to Eagle, which are the subject of the underlying litigation. See Record Document 103 at ¶ 5; Record Document 103-3.

Eagle/Axiall have raised claims against BPS under theories of negligence, strict liability pursuant to the pre-1996 version of Louisiana Civil Code article 667 and Louisiana Civil Code article 2317, breach of contract, and indemnity. See id. at ¶¶ 112-142. BPS argues that Eagle/Axiall's claims are untimely, fail to establish sufficient fact or viable legal theories, and fail as a matter of law because it is immune from liability as a government contractor. See Record Document 164-1 at 13-14. Alternatively, BPS requests that the Court require Eagle/Axiall to provide a more definite statement of their claims pursuant to Federal Rule of Civil Procedure 12(e). See id. at 14.

## LAW AND ANALYSIS

**I.   Federal Rule of Civil Procedure 12(b)(6)**

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) changed from the old, more plaintiff-friendly "no set of facts" standard to a "plausibility" standard found in Bell Atlantic v. Twombly and its progeny. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007). Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555-556, 127 S.Ct. at 1965. If a pleading only contains "labels and conclusions" and "formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citation omitted). Courts do not have to accept legal conclusions as facts. See id. "Motions to dismiss under Rule 12(b)(6) are rarely granted and generally disfavored." Rodriguez v. Rutter, 310 F. App'x 623, 626 (5th Cir. 2009) (citing

Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000)). However, courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 678-679, 129 S.Ct. at 1949-1950.

In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos County, Tex., 981 F.2d 237, 243 (5th Cir. 1993). However, the court may consider documents outside of the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims. See Maloney Gaming Mgmt., LLC v. St. Tammany Parish, 456 F. App'x 336, 340-41 (5th Cir. 2011) (citing In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 n. 10 (5th Cir. 2007)); Lone Star Fund V (U.S.), LP v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010).

BPS refers to a report allegedly prepared by Eagle/Axiall's expert, Dr. Srdjan Nesic, to support its motion to dismiss. See Record Document 164-1 at 18, 21, 23. Eagle/Axiall object to the use of the report, arguing that it is a matter outside of the pleadings. See Record Document 176 at 20-22. Dr. Nesic's report is not attached to Eagle/Axiall's Complaint, but the Complaint does refer to a report by Dr. Nesic. See Record Document 103 at ¶ 39. However, the Court has examined Dr. Nesic's report and finds that while relevant to Eagle/Axiall's claims, it is not "central" to their claims. See Lone Star Fund, 594 F.3d at 387. The primary questions of the third-party litigation concern (a) whether Eagle/Axiall is a beneficiary of any contract or insurance policy involving Parsons-Gilbane or BPS, and (b) whether Parsons-Gilbane and/or BPS introduced the surface water despite a known environmental threat or potential for bacterial contamination such that liability should attach. The Court is also concerned about the use of an unsworn expert report offered by a defendant in the context of a motion to dismiss when, if

4

considered in the context of a motion for summary judgment, a party offering such an exhibit would be required to provide a method for admissibility. See Lee v. Offshore Logistical & Transp., LLC, 859 F.3d 353, 355 (5th Cir. 2017). As such, the Court will not examine the report.

## II.     Whether Eagle/Axiall's claims are perempted by Louisiana Revised Statute 9:2772

Consistent with its fellow Third-Party Defendants, Parsons-Gilbane, BPS asserts that Eagle/Axiall's claims must be dismissed because they are perempted by Louisiana Revised Statute 9:2772. See Record Document 164-1 at 16-19. The Court is once again faced with the question of which version of the frequently amended statute applies to Eagle/Axiall's claims against BPS. Attached to Eagle/Axiall's Complaint is a document entitled "Plan for Transfer of Sulphur Mines Oil to Big Hill," which appears to be a plan developed for the eventual transfer of crude oil out of the Sulphur Mines. See Record Document 103-6. The plan indicates a date of December 31, 1991, as the deadline to complete the transfer. See id. at 3. The plan also indicates that the Sulphur Mines site would be sold and the buyer's requirements would need to be communicated to BPS so that BPS could implement the final configuration of the site to meet the (still unknown) buyer's specifications. See id. at 4. Because peremption begins to run at the time set forth in the relevant statute, the Court finds that the 1990 version of the statute is applicable to BPS. See Wilson v. Martco Ltd. P'ship., No. 07-1082, 2003 WL 11393109, at *3 (W.D. La. July 17, 2008). The 1990 version of the statute contained a ten-year peremptive period. See La. R.S. 9:2772 (1964) as amended by 1990 La. Acts 712.

BPS argues that its work at the site terminated on or about December 31, 1991, as noted in the transfer plan discussed above, and that all of its work had been accepted by the federal government at that time. See Record Document 164-1 at 18. Moreover, BPS relies on the previously excluded report of Dr. Nesic to argue that the government transferred the Sulphur

5

Mines to PPG in 1994.  See id.  BPS contends that the peremptive period of the statute was triggered on December 31, 1991, when BPS completed decommissioning the Sulphur Mines site.  See id. at 19.

After a review of the transfer plan, the Court is of the opinion that it cannot rely on the December 31, 1991, date contained therein to trigger the peremptive period.  The document indicates "the Project Management Office was given until December 31, 1991, to complete the transfer."  See Record Document 103-6 at 3.  This is not a record of the actual date that BPS concluded its activities at the site, which remains uncertain.  Moreover, the document indicates that BPS would be responsible for additional activities once a buyer was determined.  See id. at 4.  While it is likely that the peremptive period for any construction by BPS at the site began near that time period, the Court cannot rely on an uncertain date in the context of a Rule 12 motion.  The Court also notes the distinction between construction and operational activities noted in Eagle/Axiall's Complaint.  See Record Document 103 at ¶ 134.  As discussed in the Court's prior rulings, operational activities do not appear to be covered under the plain language of the statute.  See Record Document 243 at 15.  As such, the Court cannot find that any of Eagle/Axiall's claims against BPS are perempted at this time.[3]

### III. Whether Eagle/Axiall's claims are prescribed

BPS has presented nearly identical arguments regarding prescription that were presented in Parsons-Gilbane's motion to dismiss.  For the same reasons, the Court declines to find that Eagle/Axiall's claims against BPS have prescribed at this time.  Also, as noted above, it is not clear from the Complaint or attached exhibits that December 31, 1991, was the last day BPS was

---

[3] BPS argues in its reply brief that it is immune from liability pursuant to Louisiana Revised Statute 9:2771.  See Record Document 179 at 20-21.  The Court agrees that Section 9:2771 provides an additional defense for contractors.  However, it is unclear from the documents attached to the Complaint that BPS's work at the site falls within the scope of the statute.

active at the Sulphur Mines. The Court is aware of the allegations contained in the complaint of the Plaintiffs in the original litigation regarding the timing of Eagle/Axiall's alleged knowledge of the pipeline leaks. However, this is a matter better suited for summary judgment.

**IV.     Whether Eagle/Axiall have properly stated a claim for breach of contract**

BPS contends that Eagle/Axiall have failed to properly state a claim for breach of contract. See Record Document 164-1 at 24. Based on the briefing, all parties agree that Eagle/Axiall's claims are based on their status as a third-party beneficiary.

The Louisiana Civil Code provides that a contract benefitting a third party may exist. See La. Civ. Code arts. 1978-1982. Such a contract is known as a *stipulation pour autrui*. See Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary, 2005-2364 (La. 10/15/06), 939 So.2d 1206, 1211. However, the code does not provide an analytical framework to determine when such a contract exists. See id. at 1212. A determination must be made on a case-by-case basis. See id. The current jurisprudence provides "three criteria for the Court to consider in determining whether the contracting parties have provided a benefit to a third party: (1) the stipulation for a third party is manifestly clear; (2) there is certainty as to the benefit provided [to] the third party; and (3) the benefit is not a mere incident of the contract between the promisor and the promisee." Id. "A *stipulation pour autrui* is never presumed." Id. "The party claiming the benefit bears the burden of proof." Id. (citing La. Civ. Code art. 1831).

First, BPS notes that Eagle/Axiall have failed to present any contract through which Eagle/Axaill have been named as a third-party beneficiary. See Record Document 164-1 at 24. Eagle/Axiall's Complaint does reference by number a contract between the Department of Energy and BPS (Contract No. DE-AC96-85PO21431), but the contract itself is not attached. See Record Document 103 at ¶ 44. BPS argues that Eagle/Axiall then make a conclusory

7

statement based on information and belief that they were third-party and/or direct beneficiaries to certain agreements to which BPS is a party, such that a failure by BPS to secure and obtain insurance on behalf of Eagle/Axiall constitutes a breach of BPS's contractual obligations. See Record Document 164-1 at 24. BPS contends that such speculative statements do not create a cause of action for breach of contract, and do not meet the requirement that a stipulation in favor of a third-party was made manifestly clear. See id. at 25.

Eagle/Axiall respond that although they have not attached the contract between BPS and the Department of Energy to their Complaint they have nonetheless pleaded sufficient facts to support their claims. See Record Document 176 at 35. Eagle/Axiall note that they have alleged that BPS, as a government contractor, would have had to undertake certain contractual obligations to protect and prevent injury to PPG, its corporate successor, and other third-party property owners while performing work at the Sulphur Mines. See id. As for the missing contract, Eagle/Axiall contend that the contract was not attached because they have been unable to conduct discovery with BPS. See id. Moreover, Eagle/Axiall contend that BPS could have attached the contract to their motion to dismiss, but did not do so. Finally, Eagle/Axiall note that the filing of their Complaint without attaching the contract is an insufficient reason to dismiss a case under Rule 12(b)(6). See id.

This Court must determine whether Eagle/Axiall have presented a plausible claim. As noted, Eagle/Axiall have alleged that they are successors of PPG, who was operating in adjacent caverns within the Sulphur Mines facility. Eagle/Axiall have provided a document indicating that BPS had a contract of some sort with the federal government to assist in decommissioning the mines that were used for crude oil storage. As a government contractor, Eagle/Axiall allege that BPS would have been required to provide assurances, such as additional insurance, to

protect adjacent property owners, including PPG. The Court finds that Eagle/Axiall have alleged facts sufficient to raise their right to relief beyond the speculative level and have presented more than mere labels and conclusions. The documents that were attached to the Complaint indicate that the federal government was concerned about the actions of other contractors involved in the Sulphur Mines project upon adjacent property owners. As such, it is possible that the contract, once produced, between the Department of Energy and BPS may contain a provision to that effect. Thus, the Court finds that there is enough information contained in the Complaint to reasonably expect that discovery may provide evidence of the necessary elements of this claim. See In re S. Scrap Material Co., 541 F.3d 584, 587 (5th Cir. 2008). Whether Eagle/Axiall will be able to prove the elements of a *stipulation pour autrui* once the contract has been produced is a question for another day.

V. **Defenses to Liability**

A. **Derivative sovereign immunity**

BPS argues that Eagle/Axiall's claims should be dismissed because it is shielded from liability pursuant to the doctrine of derivative sovereign immunity based on its status as a government contractor. See Record Document 164-1 at 27.

Derivative sovereign immunity, also known as Yearsley immunity, is an affirmative defense that shields government contractors from liability when their work was (1) "authorized and directed by the Government of the United States," and (2) "performed pursuant to an Act of Congress." See Taylor Energy Co., LLC v. Luttrell, 3 F.4th 172, 175 (5th Cir. 2021) (quoting Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 160, 136 S.Ct. 663 (2016)); Yearsley v. W.A. Ross Constr. Co., 309 U.S. 18, 20, 60 S.Ct. 413 (1940). Additionally, to enjoy derivative sovereign immunity "the contractor must adhere to the government's instructions" described in

the contract.  See Taylor, 3 F.4th at 176 (citing In re KBR, Inc., Burn Pit Litig., 744 F.3d 326, 345 (4th Cir. 2014)).  "[S]taying within the thematic umbrella of the work that the government authorized is not enough to render the contractor's activities the act[s] of the government." Id.

BPS argues that as a contractor performing duties for the Department of Energy, it acted pursuant to and within the confines of its authority delegated by the government.  See Record Document 164-1 at 29.  BPS argues that Eagle/Axiall have not alleged that it acted beyond the scope of its contract with the Department of Energy, nor have they alleged a specific provision to indicate that BPS was in breach of contract.  See id.

As noted above, derivative sovereign immunity is an affirmative defense, and as such, BPS bears that burden of proof on this issue.  See Taylor, 3 F.4th at 176.  BPS is correct that Eagle/Axiall have not pointed to a provision of BPS's contract with the federal government.  However, that is not Eagle/Axiall's burden.  The documents attached to the Complaint suggest that BPS had a contract with the federal government to decommission the Sulphur Mines.  See Record Documents 103-5 and 103-6.  But, without a copy of the contract, the Court cannot evaluate whether BPS acted within the scope and confines of the contract such that derivative sovereign immunity would apply.

### B. The government contractor defense

BPS also argues that in addition to derivative sovereign immunity, the face of Eagle/Axiall's complaint demonstrates that it may protect itself by utilizing the government contractor defense.  See Record Document 164-1 at 30.  A government contractor is shielded from civil liability when it shows: (1) "the United States approved reasonably precise specifications;" (2) the contractor's service "conformed to those specifications;" and (3) the contractor warned the United States about any danger associated with the service known to the

contractor but not to the United States. Boyle v. United Technologies Corp., 487 U.S. 500, 512, 108 S.Ct. 2510, 2518 (1988); see also Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 74, 122 S.Ct. 515, 523 n. 6 (2001) (expanding Boyle from products liability to all claims arising from services performed by government contractors). Government contractor immunity is an affirmative defense. See Guarisco v. Boh Brothers Constr. Co., LLC, 421 F.Supp.3d 367, 374 (E.D. La. Oct. 3, 2019).

BPS maintains that all claims against it should be dismissed because (1) the Department of Energy issued or approved all design specifications, including warnings, involving the Sulphur Mines; (2) BPS's work conformed to the specifications provided; and (3) the Department of Energy was fully aware of any potential hazards involving the pipeline leaks in this litigation. See Record Document 164-1 at 31. The Court is unable to determine such a conclusion based on the Complaint and its attachments because it is not clear that BPS's work conformed to the specifications issued or approved by the Department of Energy or that the Department of Energy was aware of any potential hazard to the pipelines. Again, this is a matter better addressed in the context of a summary judgment motion.

## VI.    Federal Rule of Civil Procedure 12(e)

Finally, BPS requests that the Court order Eagle/Axiall to provide a more definite statement of their claims. See Record Document 164 at 32-33. Under Rule 12(e) of the Federal Rules of Civil Procedure, a defendant may move for a more definite statement of a pleading "which is so vague or ambiguous that the party cannot reasonably prepare for a response." Fed. R. Civ. P. 12(e). "Although Rule 12(e) motions are an available remedy, motions for more definite statements are generally disfavored because of the liberal pleading standard set forth in Rule 8." Arceneaux v. Blanchard Contractors, No. 13-4841, 2013 WL 5329898 at *1 (E.D. La.

Sept. 29, 2013) (quotation omitted). Relief under Rule 12(e) is limited to cases where the "complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed…." Williams v. Baton Rouge Police Dept., No. 17-00165, 2017 WL 6045437 at * 1 (M.D. La. Dec. 6, 2017).

The Court finds that the Complaint is sufficient to allow a responsive pleading to be framed. Therefore, a more definite statement pursuant to Rule 12(e) is not required in this case.

## CONCLUSION

For the reasons stated herein, BPS's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the Alternative, a More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e) (Record Document 164) is **DENIED**.

**THUS DONE AND SIGNED**, this 7th day of October, 2021.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE