UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| ROBERT LEE BOUDREAUX | CIVIL ACTION NO. 18-0956 |
| VERSUS | JUDGE DONALD E. WALTER |
| AXIALL CORPORATION, ET AL. | MAGISTRATE JUDGE KAY |

**MEMORANDUM RULING**

Before the Court is a Motion for Partial Summary Judgment based on the Subsequent Purchaser Doctrine filed by Defendants, Eagle US 2 LLC ("Eagle"), Axiall Corporation, and Axiall, LLC (collectively "Axiall"). See Record Document 54. Plaintiff, Robert Lee Boudreaux ("Boudreaux"), opposes the motion. See Record Document 120. For the reasons assigned herein, Defendants' motion is hereby **GRANTED**.

**BACKGROUND INFORMATION**

Boudreaux alleges that two brine pipelines crossing his 44-acre property in Calcasieu Parish have leaked over time, causing significant damage. See Record Document 1-15 at ¶ 5. Boudreaux alleges that the now defunct pipelines are owned and were previously operated by Eagle, a wholly owned subsidiary of Axiall Corporation, and were once used to transport brine from the Sulphur salt dome mines to a chemical plant in Westlake, Louisiana. See id. at ¶¶ 6-7. The Defendants contest Boudreaux's ownership of the 100-foot-wide strip of land where the pipelines are located. See Record Document 56-1 at 9-10. Rather, Defendants allege that Axiall, LLC is the owner of the strip of land, having acquired title from Brimstone Railroad and Canal

Company, or alternatively, by acquisitive prescription through possession of more than thirty years without interruption.[1]  See id. at 10.

On May 21, 2014, Boudreaux filed suit against the Defendants.  See Record Document 1-1 at 1.  Therein, Boudreaux alleges that leaks from the two pipelines have severely contaminated his land, and that "the damage to [his] property is actionable as a tort, a breach of contract, a failure to operate prudently, a failure to maintain *garde* or control of the harmful byproducts or operations, a failure to observe the obligations of neighborhood and other personal or predial servitudes, and a failure to obey any laws under which the plaintiff[] [is] a third-party beneficiary to contracts between the defendants and others."  See Record Document 1-15 at ¶ 38.  Plaintiff also alleges that the contamination of his land, and Defendants' failure to remove the allegedly toxic materials, constitutes a continuing trespass.  See Record Document 1-15 at ¶ 47.  He further alleges that Defendants' actions have created an ongoing and damaging nuisance, and that Defendant's failure to restore his land constitutes a continuing breach of duties imposed by tort law and contract law.  See id. at ¶¶ 48-49.

Defendants move for partial summary judgment arguing that, in the event Boudreaux owns the strip of land in question, the subsequent purchaser doctrine precludes all claims arising before September 13, 2007, the date Boudreaux purchased the 44-acre property through which the contested strip of land transverses.  See Record Document 54-1 at 5.  Boudreaux opposes the motion, arguing that Defendants' reliance on the subsequent purchaser doctrine is misplaced and he has a right to enforce the terms of predial servitudes affecting the strip of land as a matter of law.  See Record Document 120 at 7.

---

[1] A determination of ownership of the strip of land is not required for the Court to provide a ruling on the question of law presented by the Defendants' motion for summary judgment.

## LAW AND DISCUSSION

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

If the motion for summary judgment involves a question of law rather than questions of fact, it is a matter appropriate for summary judgment. See Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tex. Steel Co., 538 F.2d 1116, 1119 (5th Cir. 1976). All parties agree that Boudreaux purchased the property in question on September 13, 2007, and a copy of the transaction has been filed in connection with this motion. Accordingly, this question of law may be decided by summary judgment.

### II. Subsequent Purchaser Doctrine

In 2011, the Louisiana Supreme Court issued Eagle Pipe and Supply, Inc. v. Amerada Hess Corporation, No. 2010-C-2267 (La. 10/24/22), 79 So.3d 246, which provides a comprehensive examination of the legal principles underpinning the subsequent purchaser doctrine as well as a thorough review of the Louisiana case law involved in the development of the rule. Therein, the court describes the subsequent purchaser doctrine as follows: "[t]he subsequent purchaser rule is a jurisprudential rule which holds that an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the

property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted." See id. at 256-257.

The subsequent purchaser doctrine stems from the distinction between "real rights" and "personal rights" under Louisiana law. See id. at 261-263. A "real right," although not defined by the Civil Code, is synonymous with ownership of a thing and its dismemberments (personal or predial servitudes). See id. at 258. It is the ownership that confers "real rights" upon the owner of the thing or holder of its dismemberments. See id. Ownership is "synonymous with proprietary interest" and "defines the relation of man to things and may, therefore, be declared against the world." Id. at 259 (quoting Harwood Oil & Min. Co. v. Black, 240 La. 641, 652, 124 So.2d 764, 767 (La. 1960)).

A real obligation is a duty that is correlative and incidental to a real right. See id. at 261; La. Civ. Code. art. 1763. While a "real right" under "property law encompasses the legal relationship which a person has in things, the law of obligations deals with a specific legal relationship between persons." See Eagle Pipe, 79 So.3d at 260. An obligation is the legal relationship wherein an obligor is bound to render a performance in favor of an obligee. See id. (citing La. Civ. Code art. 1756). Obligations are created by contract or may arise directly from the law, and are divided into "strictly personal," "heritable," and "real." See id. at 261 (citing La. Civ. Code arts. 1757, 1763, 1765, 1766). Real obligations "are duties imposed on a particular person who owns or possesses a thing subject to a real right, and they are real in the sense that, as correlative of a real right, these obligations attach to a particular thing and are transferred with it without the need of an express assignment or subrogation." Id. at 261 (citing A.N. Yiannopoulos, *Louisiana Civil Law Systems* § 212, p. 407 (1977)). In contrast, a "personal right" is "[t]he legal right that a person has against another person to demand the performance of

4

an obligation[.]" Id. at 262 (quotation omitted). A personal right "defines man's relationship to man and refers merely to an obligation one owes to another which may be declared only against the obligor." Id. A personal right is only effective between the two parties. Id. This is "distinct from a real right, which can be asserted against the world." Id.

As the court in Eagle Pipe noted, "[i]n some instances, a real right and a personal right may appear to be the same, but the underlying nature of the rights distinguishes them." Eagle Pipe, 79 So.3d at 262. "Real rights and real obligations pass to a subsequent acquirer of a thing to which it is attached without the need of a stipulation to that effect." Id. (citing La. Civ. Code art. 1764, Revision Comments -1984, (c)). Conversely, "[a] personal right … cannot be asserted by another in the absence of an assignment or subrogation." Id. at 263 (citing La. Civ. Code art. 1764, Revision Comments – 1984, (d) and (f)). The court further explained:

> injury to property must be understood as damage to the real rights in the property. A tortfeasor who causes injury or damage to a real right in property owes an obligation to the owner of the real right. This relationship arises as a matter of law and provides to the owner of the real right a personal right to sue the tortfeasor for damages.[2] In the absence of an assignment or subrogation of this personal right, a subsequent purchaser of the property cannot recover from a third party for property damage inflicted prior to the sale.

Id. at 279. The court also found that the subsequent purchaser doctrine is equally applicable to non-apparent property damage. See id. at 275-76.

### A. Application to Plaintiff's Tort Claims

Based on the holding in Eagle Pipe, Defendants move to dismiss Plaintiff's tort claims for alleged property damage occurring before September 13, 2007, the date Boudreaux purchased the property in question. See Record Document 54-1 at 10-12. Plaintiff argues that

---

[2] Each successive owner of the property will have a personal right to sue for damage that occurred to the property during his ownership. See Eagle Pipe, 79 So.3d at 264.

Eagle Pipe is inapplicable to the facts of this case and Defendants have a fundamental misunderstanding of both the premise of the case at hand and the Eagle Pipe decision. See Record Document 120 at 11. The Court notes that Plaintiff's brief focuses on the applicability of the subsequent purchaser doctrine to the Defendants' alleged breach of the prior servitudes[3] covering the land upon which the two pipelines were installed. However, Plaintiff's complaint clearly indicates that he is also asserting claims based in tort including negligence, trespass, and nuisance. See Record Document 1-15 at ¶¶ 38, 40, 47, 48. As such, the Court will proceed first in analyzing the subsequent purchaser doctrine as it relates to Plaintiff's tort claims.

The Court must begin its analysis with an examination of the cash sale dated September 13, 2007, between Boudreaux and the previous owners of the property, James Richard and Juanita Richard. See Record Document 54-2 at 7-10. The cash sale includes typical conveyance language as follows:

> James Ray Richard and Juanita Marie Hollier Richard … vendors, who declared that said vendors do, by these presents, bargain, sell, convey, transfer, assign, grant, set over and deliver, with all legal warranties and with full substitution and subrogation, to all rights and actions of warranty against all former owners and vendors, unto: Robert Lee Boudreaux[.]

---

[3] The prior servitudes, executed in 1946 and 1965, are agreements between the corporate predecessors of Axiall and Eagle. The Plaintiff is not a party, although the servitudes cross Plaintiff's 44-acre property. As noted, the ownership of the strip of land containing the servitudes remains a contested issue. Additionally, the parties disagree about the extent to which the 1946 and 1965 prior servitudes apply to the Plaintiff. See Record Documents 231 and 257. For the purposes of this motion the Court will confine its ruling to the legal question of the effect of the subsequent purchaser doctrine upon Plaintiff's claims. This opinion does not address ownership of the strip of land, whether the prior servitudes are applicable to the Plaintiff, or whether Plaintiff compromised any of his claims related to a breach of the prior servitudes by signing the Covenant Agreement dated November 14, 2014. These issues are subject to separate motions for summary judgment, which the Court will address in due course. See Record Documents 52, 200, 231, and 233.

See Record Document 54-2 at 9. This language is very similar to the language evaluated in Eagle Pipe, which was found to be insufficient to act as an express assignment or subrogation. See Eagle Pipe, 79 So.3d at 281. Language of this nature speaks to the rights and actions of warranty against previous owners, but it is not an express assignment or subrogation of the right to sue for damages to the property caused by a third-party. See id., 79 So. 3d at 279; Prados v. S. Cent. Bell Tel. Co., 329 So.2d 744 (La. 1975) (act of sale found not to contain express assignment or subrogation because it did not mention the specific cause at issue); In re Chinese-Manufactured Drywall Prod. Liab. Litig., No. 14-2722, 2020 WL 4923150, at *5 (E.D. La. Aug. 21, 2020). The Court finds that the language contained in the September 13, 2007, cash sale is insufficient to be considered an express assignment or subrogation. As such, the subsequent purchaser doctrine precludes Boudreaux from recovering damages in tort stemming from the brine leaks that may have occurred prior to the September 13, 2007, cash sale.

  **B. Application to Plaintiff's Breach of Contract Claims**

  Additionally, Defendants also argue that the subsequent purchaser doctrine would preclude Boudreaux from asserting breach of contract claims related to damage occurring prior to the September 13, 2007, cash sale based on an alleged breach by the Defendants of the prior servitude agreements covering the strip of land. See Record Document 54-1 at 12-16. Defendants maintain that the ability to claim damages pursuant to a servitude agreement is the personal right of the landowner at the time the servitude was granted, which requires an express assignment or subrogation for the right to pass to the new landowner. See id. at 14 (citing Dunlap v. Red River Waterway Comm'n, 405 So.2d 655, 658 (La. App. 3 Cir. 1981)). Defendants further argue that the Plaintiff has no right to assert a claim for the breach of the prior

7

servitudes because the September 13, 2007, cash sale does not include an express assignment or subrogation of rights to sue for damages pursuant to the prior servitude agreements. See id.

Plaintiff counters that the subsequent purchaser doctrine should not apply to his claims for breach of contract because those claims arise from the Defendants' breach of the prior servitudes. See Record Document 120 at 10-11. Plaintiff notes that the prior servitudes are inseparable from the dominant estate, passing with the ownership of the dominant estate, which remain a charge upon the servient estate when that ownership changes hands. See id. at 12-13 (citing La. Civ. Code art. 650). Plaintiff also notes that as a "real obligation," a predial servitude is transferred to the "successor who acquired the … immovable thing to which the obligation is attached, without a special provision to that effect." Id. (citing La. Civ. Code art. 1764).[4] Thus, Plaintiff contends that the rights and obligations created under a predial servitude will continue to burden the immovable property without the need for an express assignment. See id. at 13-14.

While the prior servitudes may indeed contain real obligations incidental to those real rights, the question before the Court is whether Plaintiff's claims, whether based in tort or as a breach of the servitude agreements, are precluded by the subsequent purchaser doctrine. The Court finds that to the extent the Plaintiff is alleging that Defendants, in their capacity as the owner of the servitude (i.e. dominant estate), damaged his property, such claims are based on a personal right and are therefore subject to the subsequent purchaser doctrine.

The comments to Louisiana Code article 1764 speak to this situation, noting: "when the owner of the dominant estate abuses the servient estate and causes damage, an indemnity may be due to the owner of the servient estate. If the estate is sold, the indemnity belongs to the vendor.

---

[4] Both the concept and application of real obligations are the subject of academic debate. See L. David Cromwell & Chloe M. Chetta, Divining the Real Nature of Real Obligations, 92 Tul. L. Rev. 127 (2017); 2 La. Civ. L. Treatise, Property § 9:12 (5th ed.)

It is a personal right and does not pass with the immovable unless assigned." See La. Civ. Code art. 1764, comment (f) (citing Dunlap, 405 So.2d 655; Dickson v. Ark. La. Gas Co., 193 So. 246 (La. App. 2 Cir. 1939); Yiannopoulos, Predial Servitudes § 157 (1983)).

As noted above, this personal right for damages occurring before Plaintiff acquired the property belongs to the previous owner and is therefore precluded by the subsequent purchaser rule. Thus, whether Plaintiff is basing his claim for damages in tort or as a breach of the prior servitudes, the subsequent purchaser doctrine would preclude all claims regarding damage that occurred prior to the September 13, 2007, cash sale because that transaction did not contain an express assignment or subrogation of those claims.[5]

### C. Burden of Proof

Finally, the parties dispute who has the burden of proving that certain property damage allegedly occurred prior to the September 13, 2007, cash sale as opposed to after the sale. Plaintiff maintains that Defendants must establish the condition of the land at the time of his purchase and identify, with specificity, the damages resulting from their operation of the pipelines post-acquisition. See Record Document 120 at 15. Plaintiff notes that while, in general, it is the party seeking to enforce an obligation that bears the burden of proof, an exception exists "when the proof of a certain fact is peculiarly within the power of one of the litigants" such that the "opponent is the most cognizant of facts necessary to decide the issue." See id. at 15-16 (quoting Artificial Lift v. Prod. Specialties, 626 So.2d 859, 862 (La. App. 3d Cir. 1993); Orlesch v. Fairchild Auto Co., 13 Teiss. 303, 307 (La. Ct. App. 1916)). Plaintiff argues that Defendants are in the best position to establish the relevant condition of the land before and

---

[5] This opinion only addresses the subsequent purchaser doctrine, which precludes claims for damages. It does not address the application of any other real obligations that may exist between the parties.

after his September 13, 2007, purchase because Defendants are the only parties with personal knowledge of the nature and extent of all the brine leaks over the years. See Record Document 120 at 16.

This case is unique in that damage allegedly caused by the Defendants may have occurred both prior to and after the September 13, 2007, cash sale. If Defendants would like to exclude certain damages under the subsequent purchaser doctrine it seems reasonable to the Court that the Defendants should be the party to provide the necessary information to separate those damages from the damages occurring after the sale. The Defendants are in the best position to know both the date and location of each discrete leak that may have occurred on Plaintiff's property. However, the burden ultimately remains with the Plaintiff to prove his case.

## CONCLUSION

For the reasons assigned, Defendant's Motion for Partial Summary Judgment based on the Subsequent Purchaser Doctrine (Record Document 54) is hereby **GRANTED**. An order consistent with this opinion shall issue forthwith.

**THUS DONE AND SIGNED**, this 13th day of January, 2022.

*Donald E. Walter*
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE